IN THE DISTRICT COURT FOR DOUGLAS COUNTY, NEBRASKA

JOHN M. FRIEND

| | | |
|---|---|---|
| DENNIS P. WALKER and DIANA WALKER | ) | Docket 108 Page 686 |
| | ) | |
| Plaintiffs, | ) | APR 0 2 2008 |
| | ) | |
| | ) | COMPLAINT |
| v. | ) | |
| | ) | |
| COUNTRYWIDE HOME LOANS, a Division of Countrywide Bank, FSB, and COUNTRYWIDE HOME LOANS' WHOLESALE LENDING DIVISION d/b/a AMERICA'S WHOLESALE LENDER, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

COME NOW the Plaintiffs and for their cause of action against the Defendants state and allege as follows:

## PARTIES AND JURISDICTION

1.  Plaintiff Dennis Walker is a resident of Douglas County, Nebraska.

2.  Plaintiff Diana Walker is a resident of Douglas County, Nebraska.

3.  Defendant Countrywide Home Loans Inc. is a foreign corporation licensed to do business in Nebraska.

4.  Defendant Countrywide Home Loans Inc. is a division of Countrywide Bank, FSB.

5.  Countrywide Bank, FSB is a federal savings bank regulated by the Office of Thrift Supervision.

6.  America's Wholesale Lender® is a registered trade name of Countrywide Home Loans' Wholesale Lending Division. The trade name is registered in Nebraska.



EXHIBIT
A

7.    Jurisdiction is proper in this Court because Defendants have sufficient contacts with the State of Nebraska to satisfy the requirements of due process. The loan documents were signed in Nebraska and the proceeds of the loan were disbursed in Nebraska.

8.    Venue is proper in this Court because this is a county in which the transaction or part of the transaction giving rise to the cause of action occurred.

## FACTS AND BACKGROUND

9.    In or around May or June of 2004 Plaintiffs Dennis and Diane Walker (hereafter "Walkers") decided to refinance certain real property owned by them and located in Colorado (hereafter the "Walker Property").

10.    Plaintiffs contacted a loan broker, Seth Roberts, operating as Atlas Mortgage Co. (hereafter "Roberts"). Roberts represented to the Walkers that he worked with a lender who would be able to give them extremely favorable terms to refinance their property.

11.    The Roberts later learned that company was Countrywide Home Loans.

12.    Roberts represented to the Walkers that the terms offered by the lender who would finance the loan would include the following:

a.    The Loan rate would remain locked at 2.25% for one year.

b.    Any subsequent rate increase would not increase the monthly payment by more than 7.5%.

c.    That the Walkers needed to provide a deposit "immediately" in order to "lock in" the 2.25% interest rate.

13.    Roberts provided prepared materials to the Walkers that included the same terms set out in paragraph 11 and additional representations about the loan terms being offered that made it appear the terms were very favorable to the Walkers.

2

14.   On information and belief, Countrywide prepared or provided information for the materials presented to the Walkers by Roberts that explained the loan terms and/or Countrywide knew and authorized the loan terms that Roberts had put in the promotional materials.

15.   Countrywide established the terms of the loans that would be offered to the Walkers by Roberts.

16.   Countrywide at all times knew that the type of loan Roberts was marketing to the Walkers on behalf of Countrywide was an adjustable rate mortgage loan under which the interest rate could be raised each month.

17.   The Walkers specified that they were only interested in a loan that had no prepayment penalty.  Roberts assured the Walkers that it would be possible to pay off the loan without prepayment penalty.

18.   Roberts and Countrywide had developed a pattern and practice of working together to offer loans using the materials used by Roberts to entice the Walkers into taking out a loan with Countrywide.

19.   The Walkers relied upon Defendant Roberts' statements, representations and inducements by agreeing to accept the Loan based upon Roberts' oral statements, representation and promises about the material terms of the Loan document made by Defendant Roberts.

20.   Roberts used both United States mail and "wire" communications including telephone, email and facsimiles to make false representations regarding the loan's terms.

21.   Countrywide knew or should have known that Roberts was not providing accurate information about loan terms to potential borrowers.

22.   The Walkers were never provided with information showing the real terms of the loan prior to their closing the transaction.

3

23.   The Walkers were never provided a good faith estimate showing the actual terms of the mortgage before signing the loan documents.

24.   In reliance upon the oral statements, representations and inducements regarding its terms Plaintiffs closed the loan. Taking the mortgage from Countrywide made the Walkers unable to take advantage of legitimate loan opportunities in the market that were available to them at the time they closed their mortgage with Countrywide.

25.   In a classic bait and switch maneuver the Walkers were sent loan documents containing terms different from the terms contained in all the written and oral representations made by Roberts. The Walkers were told, however, that the loan terms set out in the documents to be signed were the same terms represented by Roberts.

26.   The documents were sent to the Walkers were in Omaha, Nebraska and signed the documents in Omaha.

27.   Roberts instructed the Walkers to sign all the documents and return all the documents to Colorado for "final processing" and that they would be provided copies of the loan documents after they were "processed."

28.   The Walkers returned the documents to Colorado immediately after signing as they were instructed to do.

29.   The documents signed by the Walkers in Omaha were notarized by a Colorado notary after the documents were returned to Colorado.

30.   On the first business day following the Walkers' signing the mortgage documents, the Walkers requested an employee with financial expertise review the documents they had signed. This representative of the Walkers contacted Roberts and requested a copy of the loan

4

documents be sent to him so that he could review the terms and advise the Walkers if they should rescind the loan.

31.    Roberts and Countrywide failed and refused to provide the Walkers with the actual loan documents in response to this request.  When copies of the loan documents were requested, Roberts merely sent another copy of the promotional materials that misrepresented the terms of the loan.  The Walkers were not provided a copy of the actual loan documents until the rescission period expired.

32.    After the rescission period had passed and copies of the loan documents were provided to the Walkers, the Walker reviewed the terms of the loan documents and discovered the terms were materially different from the terms and conditions that Roberts had represented to the Walkers.

33.    The promotional materials utilized by Roberts on behalf of Countrywide fail to disclose that negative amortization may result.

34.    The Loan entered into with Countrywide is inconsistent with the loan terms represented to Walkers in at least the following:

a.    The Loan imposed prepayment penalties.

b.    If the Walkers paid only their minimum monthly payment it would result in negative amortization.

c.    The interest rate was not locked at 2.25% for one year.

35.    The loan was for $2,689,751.60 as of September 1, 2004.

36.    Although it was true that the Walkers' minimum monthly loan payment would remain the same during the first year of the loan, a change in the interest rate would affect how much interest was paid each month.

5

37.     Once the interest rate was increased (which could happen each month) the Walkers minimum payment would not pay the entire interest on that month's loan balance.

38.     The Walkers' minimum monthly payment under this loan was set at $11,174.95.

39.     Each month when the loan's interest rate increased while the payment remained the same, the amount of unpaid interest increased.  Unpaid interest was capitalized and added into the Walkers' loan.  This process is described as "negative amortization."

40.     In order to prevent the principal amount of the loan from increasing, the Walkers had to increase their monthly payments.

41.     Under the terms of the loan offered by Countrywide through Roberts, the Walkers would have paid Countrywide $109,720.17 during the first 12 months of the loan.  As of August 1, 2005, after 12 months of payments, the principal amount of the loan would have increased to $2,690,042.02.

42.     The significant and material misrepresentations made by Roberts resulted in a significant increase in the Walkers' debt over the life of the Loan.

43.     By the time the material misrepresentations were discovered, the market had changed and loan terms that were available were less favorable than those they could have obtained from another lender at the time the Walkers entered into the Countrywide loan.

44.     Plaintiffs' lost the ability to refinance and pursue other lending alternatives at rates comparable to those represented by Defendants.

45.     After learning the actual terms of the loans, the Walkers contacted Countrywide to complain about the difference in terms.  Countrywide admitted that the loan terms were not those represented by Roberts but told the Walkers they "should have read the documents before signing."

6

46.    As a result of the change of Loan terms, the Walkers have been further damaged
in the following particulars:

a.    The interest rate of 2.25% that was to be locked for a year, changed September 1
2004 and each month thereafter, increasing the interest rate from the 2.25%
represented by Defendants to 5.625% by August 1, 2005.  The interest rate of
5.625% is higher than the interest rate stated on the loan documents as the
"highest" interest rate.

b.    After learning the undisclosed terms of the loan, the Walkers were forced to
negotiate with Countryside regarding the prepayment penalty in order to obtain
alternate financing.  During this negotiation the Walkers withheld mortgage
payments until agreement could be reached.  Countrywide represented to the
Walkers that no negative report would be made to the credit bureaus regarding
those payments.  Countrywide did make a negative report to the credit bureaus
which has affected the Walkers' credit score and resulted in their paying increased
interest on other loans.

47.    During 2004 and 2005, Countrywide and affiliated companies sold many
mortgage loans through multiple small loan brokers.

48.    Countrywide did nothing to insure that the loan brokers correctly represented loan
terms to prospective customers.

49.    Countrywide made no effort to contact prospective borrowers to inform them that
Countrywide was writing a mortgage agreement that contained terms different from those
represented by the broker.

50.     Countrywide assisted the loan brokers in making false representations by accepting documents that were signed in one state and notarized in another, and in preparing materials that showed loan terms that appeared to be extremely beneficial to a consumer.

51.     Countrywide and the loan brokers colluded to prevent customers from rescinding loans by instructing the customer to backdate the loan documents when signed, failing to leave copies of the loan documents with the customers when they were signed, or failing to provide copies of loan documents to customers until the rescission period had expired.

## FIRST CAUSE OF ACTION

### Negligent Misrepresentation

52.     All the allegations contained in the foregoing paragraphs are incorporated herein by reference.

53.     Countrywide knew or should have known the terms of the loan that was offered to the Walkers by Roberts.

54.     Countrywide knew or should have known the Walkers were relying on representations made to them regarding the terms of the mortgage with Countrywide.

55.     Countrywide failed to determine the terms of the loan offered to the Walkers before drafting mortgage documents containing terms materially different from the terms agreed to by the Walkers.

56.     Countrywide failed to provide a "good faith estimate" prior to preparing the final loan documents.

57.     Countrywide had a duty to provide accurate information regarding the actual terms of the loan to the Walkers before the day on which the Walkers signed the documents.

8

58.   Countrywide failed to provide the Walkers with accurate information regarding the terms of the mortgage before the date they signed the documents.

59.   The Walkers were damaged by Countrywide's failure to fulfill its duty to the Walkers.

## SECOND CAUSE OF ACTION

### Fraudulent Misrepresentation

60.   All the allegations contained in the foregoing paragraphs are incorporated herein by reference.

61.   Countrywide knew what representations were made to the Walkers by Roberts.

62.   Countrywide knew that the terms of the loan represented to the Walkers by Roberts did not truthfully describe the terms of the loan that Countrywide was offering to the Walkers.

63.   Countrywide knew that the loan documents were signed in Omaha, Nebraska but attested to by a Colorado notary.

64.   Countrywide intentionally did not provide a good faith estimate to the Walkers showing the actual loan terms.

65.   Countrywide knew that their loan brokers were improperly curtailing the period during which a mortgage transaction can be rescinded or providing incorrect information to the consumer until the rescission period had ended.

66.   The Walkers have been damaged by Countrywide's fraudulent conduct.

## THIRD CAUSE OF ACTION

### RICO Violation

67.   The foregoing paragraphs and recitals are incorporated herein by reference.

68. Countrywide utilized a network of small loan brokers as an enterprise to allow them to offer loans to the public.

69. Through the brokers Countrywide placed loans with terms different from the terms offered the customer.

70. Countrywide created loan terms that included rates that could be raised every month during the loan, loans with negative amortization, interest only loans, among others.

71. Through the loan brokers it dealt with, Countrywide engaged in a pattern or practice of conduct violating the laws against mail fraud and wire fraud, including but not limited to:

    a.    Countrywide developed a system of small loan brokerage offices through which to market their mortgage products;

    b.    Countrywide devised mortgage loans that would appear to be favorable to the customer but in fact would result in Countrywide receiving much more interest than it would have on conventional financing;

    c.    Countrywide assisted the loan brokers in preparing materials that either misrepresented the terms of the mortgage to be offered or failed to explain all the details of the mortgage loan Countrywide intended to offer;

    d.    Countrywide accepted documents which were not properly executed;

    e.    Countrywide utilized mail and wire communications to provide false information about loan terms that were to be offered;

    f.    Countrywide utilized mail and wire communications in communicating with the loan brokers regarding actual and proposed loan terms;

10

g. Countrywide knowingly funded loans in which a loan broker had paid part of its

fee to another party for "referring" the mortgage customer;

72. Countrywide also used the enterprise to enforce unlawful debts that were incurred

by consumers who were wrongfully deprived of the opportunity to rescind their mortgage loans

during the rescission period.

73. The Walkers and many other consumers were damaged by the actions of

Countrywide.

WHEREFORE, Plaintiffs Dennis Walker and Diana Walker, pray for a judgment under

each of its causes of action against the Defendants Atlas Mortgage Services and Seth R. Roberts,

compensatory damages, special damages for violation of RICO, pre-judgment interest, post-

judgment interest, costs, recovery of attorney fees to the extent permitted by law, and for such

other, further relief as may be appropriate under the premises.

Dated this 31ˢᵗ day of _March_____, 2008.

        Respectfully submitted,

        DENNIS WALKER and DIANA
        WALKER, husband and wife,
        Plaintiffs,

By:    _____

        James D. Sherrets, NE #18756
        Diana J. Vogt #19387
        SHERRETS & BOECKER LLC
        260 Regency Parkway Drive
        Suite 200
        Omaha, NE  68114
        Tele: (402)390-1112
        Fax: (402)390-1163
        law@sherrets.com
        ATTORNEYS FOR THE PLAINTIFFS

## VERIFICATION

STATE OF NEBRASKA    )
                         )ss.
COUNTY OF DOUGLAS    )

       I, Diana Walker, being first duly sworn, deposes and states, that I have read the foregoing Complaint and believe the same to be true and correct based upon my information and belief.

_Diana Walker_
Diana Walker

       Subscribed and sworn before me, a general Notary Public for the State of Nebraska, by Diana Walker on this 31 day of March, 2008.

> GENERAL NOTARY - State of Nebraska
> SHARON TINDELL
> My Comm. Exp. Nov. 23, 2008

_Sharon Tindell_
Notary Public

12

**IN THE DISTRICT COURT, DOUGLAS COUNTY, NEBRASKA**

Dennis P. Walker and Diana Walker

vs.

Countrywide Home Loans, a Division of Countrywide Bank, FSB, and
Countrywide Home Loans' Wholesale Lending Division d/b/a America's
Wholesale Lender

| | |
|---|---|
| **SUMMONS BY CERTIFIED MAIL** | **DOC. 1081 NO. 686** |

**STATE OF NEBRASKA** )
**COUNTY OF DOUGLAS** )

This is to notify Countrywide Home Loans, a Division of
Countrywide Bank, FSB
(Impleaded with other)

Defendant that you have been sued by Dennis P. Walker and Diana
Walker

Plaintiff in the District Court of said County, and that in order to
defend the lawsuit you must file an appropriate written response in
the Office of the Clerk of said Court within thirty days after service
of Summons and Complaint in answer to the Complaint said Plaintiff
filed against you or such Complaint will be taken as true and judgment
rendered accordingly for the relief demanded in the attached
Complaint.

RETURN of this Summons is due within ten days after return of the
signed receipt.

WITNESS my signature and the Seal of said Court at Omaha
and issued this 2nd day of April, 2008.

JOHN M. FRIEND, CLERK

BY: _____
Deputy

**ATTORNEY FOR PLAINTIFF:**
NAME:      Diana J. Vogt
ADDRESS:   260 Regency Parkway Drive Suite 200
           Omaha, NE 68114
PHONE:     (402) 390-1112

CERTIFIED MAIL

PROOF OF SERVICE BY AFFIDAVIT

STATE OF NEBRASKA )
                  )      SS.
COUNTY OF DOUGLAS )

     A copy of this writ was mailed by certified mail, return receipt requested, to defendant:_____

at the following address:_____
_____
on the _____ day of _____, 20____, which was within ten days of issuance as required by Nebraska Statute.

     The return receipt was signed on the _____ day of _____, 20____ (signed return receipt attached hereto). All done pursuant to the Nebraska Revised Statutes (Cumulative Supplement 1983).

FURTHER AFFIANT SAYETH NOT.

                                   _____

                           Attorney for:_____

          SUBSCRIBED and sworn to before me this _____ day
    of _____, 20____.

                       _____
                             Notary Public

POSTAGE: _____

ATTACH RETURN RECEIPT HERE

CERTIFIED MAIL

7004 2510 0005 5257 1554



UNITED STATES POSTAGE
PITNEY BOWES
02 1P                    $ 005.55
0003853171    APR 04 2006
MAILED FROM ZIP CODE 6811

**SHERRETS & BOECKER LLC**
ATTORNEYS AT LAW
260 Regency Parkway Drive, Suite 200
Omaha, Nebraska 68114

Countrywide Home Loans, Inc.
c/o Prentice-Hall Corp. Systems, Inc.
Suite 1900
233 S. 13th Street
Lincoln, NE 68508

*PAD*



CORPORATION SERVICE COMPANY®

# Notice of Service of Process

TWS / ALL<br>
Transmittal Number: 5701426<br>
Date Processed: 04/07/2008

| | |
|---|---|
| **Primary Contact:** | Karina Buitrago<br>Countrywide Legal Department<br>5220 Las Virgenes Road, AC-11<br>Calabasas, CA 91302 |
| **Copy of transmittal only provided to:** | Andreia Hacimoto-May |

---

| | |
|---|---|
| **Entity:** | Countrywide Home Loans, Inc.<br>Entity ID Number  0213055 |
| **Entity Served:** | Countrywide Home Loans, Inc. |
| **Title of Action:** | Dennis P. Walker vs. Countrywide Home Loans |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Property |
| **Court:** | Douglas County District Court, Nebraska |
| **Case Number:** | Docket 1081 Number 686 |
| **Jurisdiction Served:** | Nebraska |
| **Date Served on CSC:** | 04/07/2008 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| **Plaintiff's Attorney:** | James D. Sherrets<br>402-390-1112 |

---

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com